**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL BRACKEN PRICE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-11-CV-213-XR** |
| | ) | |
| **RICK THALER, Director,** | ) | |
| **Texas Department of Criminal Justice–** | ) | |
| **Institutional Division,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

## ORDER

On this date, the Court considered the United States Magistrate Judge's Report and Recommendation concerning Plaintiff Michael Bracken Price's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (docket no. 14) and Petitioner's objections thereto (docket no. 17). After careful consideration, the Court ACCEPTS the recommendation and accordingly, DISMISSES the petition for a writ of habeas corpus.

### Background

Petitioner is currently serving a forty-year sentence in the custody of the Texas Department of Criminal Justice–Correctional Institutions Division after a jury convicted him of murder. *State v. Price*, No. 2004-CR-0941 (290th Dist. Ct., Bexar County, Tex. Nov. 30, 2004). The Fourth Court of Appeals summarized the facts underlying the conviction as follows:

> After an initial altercation with several individuals outside a bar, Price returned to his hotel room and retrieved a rifle. Price returned to the scene intending to recover certain items that he lost during the altercation. Price testified that the rifle was loaded and chambered. Price took the rifle with him for protection. When he arrived at the scene, an ambulance was in the parking lot. Price pulled into the parking lot and stopped intending to wait until the ambulance left before recovering his lost items. Price testified that an individual approached his truck screaming and gesturing. Price grabbed the rifle, pointed it out the window, and started firing. Price stated he

-1-

"wanted to stop the guy from advancing and [he] just fired it up over the area." Price was driving his truck out of the parking lot as he was firing, and he was firing at an upward direction behind him. Price testified that he had used the rifle to hunt and was aware that the rifle had a "real good chance" of killing if the rifle was aimed and discharged.

*Price v. State*, No. 04-04-00886-CR, 2006 WL 927282, at *1 (Tex. App.–San Antonio April 12, 2006). Additionally, the elevation of the location of Price's vehicle at the time he discharged the rifle was visibly lower than that of the location of the ambulance and the deceased. The man who approached Price's vehicle is not the deceased; the deceased was an estimated 150 feet from Price, near the ambulance. Price had been diagnosed with clinical depression and Attention Deficit Disorder (ADD) and was taking prescription drugs at the time to treat those conditions. On the evening at issue, Price had also consumed alcohol.

The jury convicted Price of the murder of Gary Flynn. Price was denied a new trial and directly appealed to the Fourth Court of Appeals, which affirmed his conviction. Appellate counsel for Price did not file a timely petition for discretionary review (PDR) with the Texas Court of Criminal Appeals.

Price's first application for writ of habeas corpus was filed in April 2007, alleging that both his trial counsel and appellate counsel were ineffective. The trial court recommended that Price be granted an out-of-time PDR and denied relief on all remaining claims. In October 2007, the Texas Court of Criminal Appeals dismissed Price's claims regarding the ineffectiveness of trial counsel and granted relief for the ineffectiveness of the appellate counsel to timely file a PDR. Price's motion for a rehearing in the Court of Criminal Appeals regarding the ineffectiveness of trial counsel was denied on December 19, 2007, as was his out-of-time PDR in 2008.

Price filed a second application for writ of habeas corpus in April 2008, alleging ineffective assistance by his trial counsel, which was dismissed by the Court of Criminal Appeals in October. Price filed a third application for writ of habeas corpus on February 24, 2009, again alleging ineffective assistance by trial counsel. The state habeas court recommended the application be denied. The Court of Criminal Appeals denied the application without written order.

Price filed this application for writ of habeas corpus on February 27, 2011, to determine the following claims of ineffective assistance: (1)  trial counsel failed to object to the use of or have

-2-

redacted the word "murder" in the legends of five of the State's exhibits, which allowed the admission of inadmissible hearsay, unsworn, and uncross-examined testimony; (2) if trial counsel did not discern that the legends on the five State exhibits utilized the word "murder," then trial counsel failed to engage in proper discovery, or, alternatively, (3) the State engaged in prosecutorial misconduct by failing to disclose the five exhibits in question; (4) trial counsel failed to properly prepare the defendant for his testimony at trial; (5) trial counsel failed to seek a jury instruction requiring unanimity on any one or more of the three sets of elements of the murder offense; (6) trial counsel failed to object to the State informing the jury that unanimity was not required; and (7) trial counsel failed to investigate and present expert testimony during the guilt-innocence and punishment phases of trial regarding Price's mental state the time of the offense. Price's petition was referred to the Magistrate Judge, who recommended that it be denied and the case dismissed.

### Magistrate Judge's Report and Recommendation

The Magistrate Judge considered each of the Petitioner's seven claims. First, the Magistrate Judge found that it was not possible to conclude that the state habeas court was objectively unreasonable by finding there was strategic value to trial counsel's decision to not object to the exhibit labels. Report & Recommendation ("R&R") at 17-18. The Magistrate Judge also found that Price had not demonstrated the five exhibits prejudiced the jury's verdict. *Id.* at 18.

Second, for claims 2 and 3 regarding discovery and prosecutorial misconduct, the Magistrate Judge agreed with the finding of the state habeas court that trial counsel's affidavit did not suggest that he was unaware of the exhibits, just that he chose not to object as part of his trial strategy. *Id.* at 20. Furthermore, the Magistrate Judge found that Price failed to demonstrate that the State engaged in prosecutorial misconduct by failing to disclose exhibits. *Id.*

Regarding claim 4, the alleged failure to prepare Price for his testimony in accordance with his mental capabilities, the Magistrate Judge noted that trial counsel had advised Price to answer truthfully, revealed the line of questioning trial counsel would follow, suggested questions that could be expected from the State, avoided questions in which the truth would be damaging to the defensive theory, and spent several hours with Price over a series of visits. *Id.* at 21-22. Thus, the Magistrate Judge found that Price had not demonstrated that trial counsel failed to adequately prepare him to testify.

Next, the Magistrate Judge agreed with the state habeas court that Price had not demonstrated that trial counsel's performance was deficient by failing to seek a unanimity instruction or object to the State's argument that the jurors did not have to unanimously agree upon any one of the three sets of elements of the offense of murder. *Id.* at 25-26. The Magistrate Judge noted that the three subsections of Texas Penal Code § 19.02(b) do not represent separate offenses but rather represent alternative means by which to commit the same offense. *Id.* at 25. The Magistrate Judge also noted that, under Texas law, the jury must only unanimously agree that a single criminal offense occurred, not that the specific manner and means of the offense was committed in the same way. *Id*. at 24.

Finally, following the state habeas court, the Magistrate Judge found that Price had not rebutted the factual determinations of the state habeas court and demonstrated that trial counsel was unaware of Price's mental condition or that it was unreasonable for trial counsel not to present evidence during the guilt-innocence phase of trial concerning neuropharmacological factors. *Id.* at 30-31. In sum, the Magistrate Judge found all claims were without merit.

### Standard of Review and Applicable Laws

Where, as here, the Magistrate Judge's Report and Recommendation ("R&R") is objected to by either party, the Court reviews the R&R de novo, independently examining the record and assessing the law. 28 U.S.C. § 636(b)(1)(C). Any portions of the R&R not objected to will be reviewed by the Court under the clearly erroneous standard. *Id*.; *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

A petition for a writ of habeas corpus is reviewed under the standards established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petitioner may not obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

A state court's decision may be "contrary to . . . clearly established federal law" if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result . . . ." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is "an unreasonable application of clearly established federal law" if it either "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or makes an unreasonable determination as to whether or not to extend a legal principle from the Supreme Court's precedent to a new context. *Id*. at 407.

### Analysis

Claims of ineffective assistance of counsel are reviewed under the standard established by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that to be denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments, the counsel's representation must have fallen "below an objective standard of reasonableness," and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. However, counsel enjoys a "strong presumption" that his representation was reasonable. *Id*. at 689. Considering the totality of the representation, a petitioner seeking relief must prove by a preponderance of the evidence both that his counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id*. at 694-96, 698. When viewed through the lens of the AEDPA, this requires a petitioner to show that "the state court's decision– that [the petitioner] did not make the *Strickland* showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*)." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

1.   **Failure to object to or redact portions of the State's exhibit legends that included the word "murder."**

Price argues that the inclusion of the word "murder" in the State's exhibits 24, 26, 27, 28, and 54[1] prejudiced the jury's determination of his guilt, Pet'r's Objections at 10, which proves trial

---

[1]These exhibits consist of crime scene diagrams that were prepared by detectives or police officers. The diagrams each contain small headers that describe general information related to the case, including the location of the incident, the case number, the name of the individual making the

counsel was deficient in his representation of Price and satisfies the *Strickland* standard, Pet'r's Mem. at 20. He further argues that the use of "murder" in the exhibits constitutes inadmissible hearsay and an unsworn, uncross-examined legal conclusion made by the authors of the exhibits that asserts Price had in fact committed murder. *Id.* at 19-20. The label of "murder" is hearsay, Price argues, because it goes to the truth of the matter asserted and to an element of the offense. *Id.* at 22 (citing *Davis v. State*, 762 So.2d 347 (Miss. App. 2000)). Furthermore, Price contends the word "murder" could have easily been redacted without jurors being suspicious of the omission. Pet'r's Objections at 9-10.

The inclusion of the word "murder" in the exhibit legends is not prejudicial. "Offense: Murder" or "Offense Classification: Murder" is found in a form among other basic information related to the case, such as the date, location of the incident, case number, and detective name. A Texas appellate court has held that such form data in exhibits does not violate the constitutional right to be presumed innocent until proven guilty because "murder" is not an opinion on guilt or innocence, but rather it is a classification of what theory the State will pursue. *Stogner v. State*, No. 11-05-00373-CR, 2007 WL 2010835, at *4 (Tex. App.–Eastland July 12, 2007, no pet.).

Price makes a valid assertion that although there may be strategic value in not objecting to the admission of prejudicial and arguably inadmissible evidence, there is no strategic value in not objecting to prejudicial and clearly inadmissible evidence. Pet'r's Reply at 1-2 (citing *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985)). Here, however, the evidence is not "clearly inadmissible" because it is a component of a form concerning basic case information and not a legal conclusion. This case is distinguishable from the cases cited by Price because in none of the cases he cites is the disputed evidence the inclusion of the offense in the legend. Rather, they involve testimony of believed guilt by detectives,[2] testimony by a parent, doctor, counselor, and police officer that a child was telling the truth,[3] testimony of a social worker that parents try to encourage children

---

report, the date and time the report was made, and the classification of the offense. Each header lists the offense classification as "Murder."

[2] *Weatherby v. State*, 627 S.W.2d 729 (Tex. Crim. App. 1982, no pet.).

[3] *Garcia v. State*, 712 S.W.2d 249 (Tex. App.–El Paso 1986, pet. ref'd); *Miller v. State*, 757 S.W.2d 880 (Tex. App.–Dallas 1988, pet. ref'd); *Fuller v. State*, 224 S.W.3d 823 (Tex.

to lie about sexual abuse,[4] expert testimony on how to determine if a child is telling the truth,[5] testimony of a chemist on retrograde extrapolation and legal conclusion of intoxication,[6] and a probation officer's testimony on being a good candidate for probation.[7] Because the word "murder" in this case was not clearly inadmissible as a legal conclusion, it was not objectively unreasonable for trial counsel to have refrained from objecting.

Price also contends that there was no objectively reasonable strategic value in not objecting to the use of "murder" in the exhibit legends. Pet'r's Mem. at 23. Price presented four affidavits from criminal defense attorneys who all support the proposition that "murder" should have been objected to. *Id.* at 26. With these, Price attempted to undermine trial counsel's testimony that his trial strategy was to not make too many objections. *Id.* Also, by allowing the state exhibit legends to be admitted before the jury, Price argues that he was unfairly prejudiced in his manslaughter defense, regardless of the manslaughter jury instruction. *Id.* at 27-28; Pet'r's Objections at 13. Without making such objections, Price asserts, trial counsel prejudiced his defense and undermined confidence in the outcome of the trial. Pet'r's Mem. at 28.

The state court found that trial counsel's affidavit regarding his decision not to object as a strategic matter was credible and not objectively unreasonable. CCA record Event ID 2370485 at 66. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This Court must therefore defer to the conclusion that the failure to object was not objectively unreasonable, unless Price can show that jurists could not disagree as to whether this failure to object was not trial strategy. Here, however, the court finds that fairminded jurists could potentially

---

App.–Texarkana 2007, pet. ref'd.); *Lopez v. State*, 315 S.W.3d 90 (Tex. App.–Houston [1st Dist.] 2010, pet. granted).

[4] *Garcia v. State*, 308 S.W.3d 62 (Tex. App.–San Antonio 2009, no pet.).

[5]*Sessums v. State*, 129 S.W.3d 242 (Tex. App.–Texarkana 2004, pet. ref'd).

[6]*Blumenstetter v. State*, 135 S.W.3d 234, 247 (Tex. App.–Texarkana 2004, no pet.).

[7]*Mares v. State*, 52 S.W.3d 886, 892-893 (Tex. App.–San Antonio 2001, pet. ref'd).

disagree as to whether trial counsel's failure to object or redact "murder" was in fact trial strategy. While some jurors of ordinary prudence may agree with Price, others may be swayed by trial counsel's testimony as a law practitioner that jurors are not affected by such inclusions or that it may have been damaging to Price's case to try to have the word redacted.[8] Thus, this Court must defer to the state court.

Although Price rejects the characterization of the affidavits as "hindsight" by the Magistrate Judge, *Strickland* requires that in determining the effectiveness of counsel's performance, every effort must be taken to "eliminate the distorting effects of hindsight" by considering the circumstances from counsel's perspective at the time of the trial. *Strickland*, 466 U.S. at 689. This requires the Court to acknowledge that no criminal attorney would have represented Price in the same way nor adopted the same strategies. It is not difficult for a defendant or an independent practitioner who knows the ultimate verdict to criticize counsel's performance and create a counterfactual performance that might have mitigated the unfavorable result. *See id. Strickland* and the AEDPA seek to prevent this type of influenced and privileged assessment. *Harrington*, 131 S. Ct. at 779 (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002)). Therefore, the state court, and the Magistrate Judge, were not unreasonable in determining that the criminal defense attorney affidavits were not more persuasive than trial counsel's.

In sum, Price has not proven that by failing to object to the use of the word "murder" in the exhibit legends that trial counsel was deficient in his representation of Price because the use of the word "murder" was not inadmissible hearsay and reasonable minds could differ on whether it was effective trial strategy. Furthermore, Price has failed to prove that the failure to object prejudiced the outcome of the proceeding. Thus, because Price failed to establish both prongs of *Strickland*, it was

---

[8]*Strickland* does not require an evaluation of counsel's effectiveness to conform to the best practices of the profession, but rather only to the "prevailing professional norms." *Strickland,* 466 U.S. at 690. While Price submitted affidavits from criminal defense attorneys, two of whom were Board Certified in Criminal Law, to establish "prevailing professional norms" and negate trial counsel's strategy, the Fifth Circuit has been reluctant to disagree with trial counsel's strategy and render it ineffective merely because the court disagrees with the strategy. *See Beltran v. Cockrell*, 294 F.3d 730, 736 (5th Cir. 2002); *Ladd v. Cockrell*, 311 F.3d 349, 358 (5th Cir. 2002); *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1998). Price has not established that the Court should determine that trial counsel's failure to object or redact was not a valid trial strategy.

not objectively unreasonable for the state court to determine that trial counsel had not provided ineffective counsel at trial.

**2 and 3. Failure to engage in proper discovery of the State's exhibits or prosecutorial misconduct by the State for failure to disclose the exhibits prior to trial.**

Price conditionally claims he was denied his right to effective assistance at trial if trial counsel failed to engage in discovery by not requesting Exhibits 24, 26, 27, 28, and 54. This claim arises from Price's interpretation of trial counsel's affidavit, which Price states is ambiguous as to whether trial counsel actually received the exhibits through discovery or saw them for the first time at trial. Pet'r's Mem. at 19, 31. If trial counsel did not engage in such discovery, Price argues that this failure would be deficient in itself. *Id*. at 31. Alternatively, Price claims that if the State engaged in prosecutorial misconduct by a failure to disclose the exhibits, Price was denied his due process right to discover those documents prior to trial. Pet'r's Mem. at 32. As a result, the State would have induced ineffective assistance by trial counsel by not allowing him to request "murder" be redacted or to object to "murder" mentioned in the exhibits. *Id.*

The state court found trial counsel's affidavit to be credible and that "there [was] nothing to indicate that trial counsel failed to engage in proper discovery" or anything to suggest misconduct by State prosecutors. CCA record Event ID 2370485 at 66. This court must defer to such findings by the state court because Price has not shown the state court's findings were unreasonable. Furthermore, even if trial counsel had not engaged in proper discovery of the exhibits or the State withheld the exhibits, the ineffective assistance claim would still fail because, as explained *supra*, Price has not proven that the word "murder" had any prejudicial effect. Thus, it was not objectively unreasonable for the state court to determine that Price was not deprived of his constitutional right of due process through ineffective assistance of counsel.

**4.    Failure to adequately prepare Price for his testimony at trial.**

Price contends that trial counsel deprived him of effective assistance of counsel by failing to more adequately prepare him for his testimony at trial. Pet'r's Mem. at 33. As a result, Price argues that he was "completely unprepared to testify" and that his testimony "was disjointed, disorganized and lacked a cogent defensive theme." *Id*. Prior to trial, Price argues that trial counsel did not spend sufficient time preparing him to testify, did not conduct a mock examination, did not

advise Price to speak in terms of "reckless" or "negligence," and did not advise Price how to anticipate the prosecutor's questions, all of which Price claims fall below prevailing professional norms. *Id.* at 33-34. During trial, Price argues that trial counsel did not ask him any questions that would reflect that he was negligent or reckless in firing the rifle. *Id.* Price argues that trial counsel's failures prejudiced the guilt stage of trial and impacted the sentence ultimately imposed by the jury. *Id.* at 35.

      Upon review of the record, the Court cannot find that trial counsel failed to adequately prepare Price to testify at trial. Trial counsel's affidavit suggests ample time was spent preparing Price for testimony. Trial counsel states that he spent "several hours over several sessions" with Price by telling him the line of questioning trial counsel would pursue and what to expect from the prosecutor. CCA record Event ID 2347219 at 35. Furthermore, the state habeas court determined that trial counsel's testimony regarding time spent preparing Price's testimony was "truthful and accurate," CCA record Event ID 2370485 at 155, and state jail records indicate that trial counsel visited Price on May 22, 2004, August 18, 2004, September 23, 2004, and November 10, 13, and 18, 2004. CCA record Event ID 2296179 at 128-144. Price argues that the time reflected by the jail visitation records is not sufficient to adequately prepare testimony for a murder case, especially when the defendant has been diagnosed with a personality disorder. Pet'r's Mem. at 36. However, Price has not presented evidence or cited authority to support his assertion that it was necessary for trial counsel to spend more time working with him or that trial counsel's failure to do so was objectively unreasonable.

      Nor can the Court find that trial counsel's questioning at trial was deficient. As the Magistrate Judge summarized, trial counsel questioned Price about the direction he was shooting, VII RR at 134, 136, 142-47, presented testimony on the weather conditions, VII RR at 57, 66, 70, and presented testimony that he was shooting upwards and miscalculated the angle, VII RR 209, 216-17, 219, 221, 223, 225-30, 232-34, 237, 247; VIII RR at 39-43, 52, 54-59, 67-58, 71. R&R at 22-23. The Court agrees with the Magistrate Judge that this evidence supported Price's claim that he was shooting over, rather than towards, the people present. Price's testimony therefore lent support for his argument that the homicide was the result of negligence or recklessness. Furthermore, trial counsel testifies that he "did not ask certain specific questions" because he knew that "truthful

-10-

answers would not have been beneficial to [Price]." CCA record Event ID 2347219 at 35. The Court cannot find that trial counsel's strategic decisions concerning the specific testimony to elicit from Price at trial were unreasonable, especially in light of Price's familiarity with weapons and the limited options that trial counsel had available. Thus, Price has not demonstrated deficient performance either before or during trial.

Furthermore, it is not clear that more trial preparation would have changed the result of the trial or sentence. The record shows that trial counsel requested instructions on manslaughter and criminally negligent homicide and was successful in obtaining an instruction on manslaughter. VIII RR at 25, 27-28.[9] Price does not dispute his familiarity with weapons. In fact, Price testifies that the gun he fired on the night of the murder was given to him by his father when Price was eight years old, and Price claims to be proficient in aiming and hitting a target. VII RR at 171-73. Thus, the Court cannot find that any additional testimony from him during trial would have led to a criminal negligence instruction being presented to the jury. Additionally, at least one Texas appellate court has held that an intent to kill could be inferred per se from the use of a deadly weapon. *Navarro v. State*, 863 S.W.2d 191, 206 (Tex. App.–Austin 1993, writ denied) (citing *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984, no pet.)). Therefore, even if Price had been given more instruction regarding his theories of recklessness or negligence, Price has not shown that it would have changed the result of his conviction or sentence. Accordingly, the Court cannot find that the state court was unreasonable in finding this claim without merit.

**5 and 6. Failure to seek a unanimity instruction and failure to object to the State's closing argument that jurors did not have to unanimously agree upon one or more of the three different sets of elements of the offense of murder.**

Price asserts that trial counsel was ineffective and denied him both his federal due process right and Texas constitutional right to jury unanimity when trial counsel did not seek a unanimity instruction or object to the State's closing argument that unanimity among jurors was required on which of the three means by which Price committed the murder offense. Pet'r's Mem. at 37-38. Price

---

[9]The trial and appellate courts both denied a criminal negligence instruction due to Price's familiarity with gun use and the known risks of firing a weapon. VII Reporter's Record at 25, 27-28; *Price*, 2006 WL 927282 at *2.

argues that the jury must unanimously agree on each element of an offense in order to be found guilty beyond a reasonable doubt. *Id*. at 38. Price argues that Texas Penal Code (TPC) § 19.02(b)[10] lists three separate sets of elements and that, to convict, the jury must be unanimous as to one of the elements. *Id*. Due to this alleged deficiency, Price asserts that trial counsel undermined confidence in the outcome of the guilt stage of the trial and a new trial should have been granted. *Id*. at 43.

  The petitioner is correct in asserting that *In Re Winship,* 397 U.S. 358, 364 (1970)*,* requires guilt to be established beyond a reasonable doubt on every element of the crime. Pet'r's Mem. at 38. However, the Supreme Court plurality held in *Schad v. Arizona*, 501 U.S. 624 (1991), that when alternative theories by which a single offense can be committed are listed in a statute, the jury is only required to unanimously determine that each element has been met, but not the underlying means by which an element has been met.[11]

  The *Schad* plurality established a two-step approach to determine whether unanimity is required. The first step under a *Schad* analysis is to determine whether the legislature intended to create separate offenses or merely alternative means of committing the same offense. *Id.* at 636-37. Second, the court must determine whether the statute violates due process. Furthermore, *Schad* held that general verdicts are appropriate since jurors may agree that the single offense was committed, but may be swayed by differing means by which the offense was committed. *Id*. at 631 (citing *McCoy v. North Carolina*, 494 U.S. 433, 449 (1990)).

---

[10] TPC § 19.02(b) states:
 (b) A person commits an offense if he:
  (1) intentionally or knowingly causes the death of an individual,
  (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual,
  (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in the immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

[11]In *Schad,* the jury instructions did not require the jury to unanimously determine if the defendant had committed premeditated murder or felony murder under the single offense of first-degree murder. *Id*. at 630.The *Schad* court concluded that only the *actus reus* must be unanimously determined, but alternative means for the *mens rea* do not require unanimity. *Id*. at 632.

Price suggests the Supreme Court decision in *Ring v. Arizona*, 536 U.S. 584 (2002), negates the *Schad* application in this case. Pet'r's Mem. at 39, 41. However, as the Fifth Circuit has noted, *Ring* involved a Sixth Amendment challenge regarding the right to a jury trial; questions regarding the right to jury unanimity, as in this case, are "more accurately characterized as a due process issue." *See Green v. Quarterman*, 312 Fed. Appx. 635, 639 (5th Cir. 2009). Furthermore, the Fifth Circuit has not required unanimity in determining which alternative means were used to commit a single offense and has repeatedly applied *Schad* in jury unanimity claims since the *Ring* decision. *Id*.[12]

Likewise, the Texas Court of Criminal Appeals directly follows the two-step analysis in *Schad* for jury unanimity claims. *Jefferson v. State*, 189 S.W.3d 305, 312-13 (Tex. Crim. App. 2006, pet. granted). Under the first prong, Texas state courts have consistently held that TPC § 19.02(b) does not include separate offenses listed in the subparagraphs, but rather are alternative methods of committing the same offense. *Bundy v. State*, 280 S.W.3d 425, 431-33 (Tex. App.–Fort Worth 2009, pet. ref'd); *Garcia v. State*, 246 S.W.3d 121, 141 (Tex. App.–San Antonio 2007, pet. ref'd); *Lozano v. State*, 359 S.W.3d 790, 821 (Tex. App.–Fort Worth 2012, pet. ref'd).

Due to this established Texas state and Fifth Circuit precedent for treating the subsections of 19.02(b) as alternative means to satisfy a single element of a single offense, the Court cannot find that it was objectively unreasonable for the state court to have found that Price did not meet the *Strickland* standard for ineffective assistance of counsel on this claim.[13]

---

[12] *See Maxwell v. Thaler*, 350 Fed. Appx. 854, 857-60 (5th Cir. 2009) (following *Schad* and noting that Texas state precedent has not subsequently overruled the *Schad* analysis); *U.S. v. Talbert*, 501 F.3d 449, 451-52 (5th Cir. 2007) (requiring the jury be unanimous on a fact that is the element of a crime, but not the means by which to commit the crime); *Berkley v. Quarterman*, 310 Fed.Appx. 665, 668-70 (5th Cir. 2009) (following *Schad* in unanimity instructions in a capital murder case); *Hoover v. Johnson*, 193 F.3d 366, 370-71 (5th Cir. 1999) (holding that the defendant was not entitled to have the jury unanimously agree on the means by which the "overt act" element of a conspiracy offense was satisfied).

[13] Price objects to the State's use of *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987, no pet.), arguing that it does not directly address the unanimity issue. Pet'r's Mem. at 39. However, *Aguirre* holds that a general verdict is appropriate when the indictment does not state different offenses but, instead, only states different means of committing the same offense. Here, precedent has established that 19.02(b) does not list separate offenses, so *Aguirre* is applicable in that it allows a general verdict and not a unanimous determination of which means was utilized.

7.  **Failure to investigate and present expert testimony during the guilt-innocence and punishment phases of trial regarding Price's mental functioning.**

Price claims he was denied his constitutional right to effective assistance of counsel because trial counsel failed to investigate and present expert testimony at both the guilt and punishment stages of trial that addressed Price's clinical depression, ADD, drug use, and alcohol use during the alleged offense. Pet'r's Mem. at 45.  Namely, Price argues that an effective counsel would have investigated and encouraged discussion of the neuropharmacological effects associated with these factors and how they impacted his decision to return to the parking lot and fire the rifle. *Id*. Price further offers two letters from Dr. Jonathan Lipman and an affidavit from Dr. Joann Murphey stating the probable impacts of the combination of such factors, which Price asserts could have easily been found through investigation. *Id*. at 46. While trial counsel did present testimony from Dr. Murphey at the punishment stage of trial, Price finds fault with trial counsel for not discussing the effects of the combination of factors and their physical manifestation in Price on the night in question at both the guilt-innocence and punishment phases. *Id*. at 47. Price asserts that without such investigation and discussion, the verdicts regarding guilt and punishment are not reliable. Price also asserts that had trial counsel performed an adequate investigation and presented the testimony discovered therefrom, a jury instruction for criminally negligent homicide would have been presented to the jury and the evidence regarding Price's diminished capacity would have resulted in a sentence far less than 40 years. *Id*. at 46-48.

Price's assertions leave this Court with two issues to consider: 1) was trial counsel allowed to present evidence through expert testimony regarding Price's mental capabilities to, in effect, negate the culpable mental state, and 2) if he was allowed to do so, was it objectively reasonable for trial counsel to refrain from investigating such evidence further and not present this evidence at trial.

With regard to the first issue, the Texas Court of Criminal Appeals has held that Texas does not recognize a diminished capacity affirmative defense, a lesser form of the insanity defense. *Jackson v. State*, 160 S.W.3d 568, 573 (Tex. Crim. App. 2005, pet. granted). However, evidence may be presented and considered by the jury that negates the *mens rea* element, which may include evidence of mental illness, pursuant to Texas Code of Criminal Procedure Article 38.36(a) because the evidence is "relevant to the facts and circumstances surrounding the killing. . . and show[s] the

condition of the mind of the accused at the time of the defense." *Id*. at 574. The defense cannot pursue a theory to prove that the defendant had no culpability whatsoever, but the defense can assert that the defendant's mental state reduced the ceiling of the prosecution's *mens rea* element to justify an instruction on any lesser included offense. *Mays v. State*, 223 S.W.3d 651, 654 (Tex. App.–Texarkana 2007), *rev'd on other grounds*, 285 S.W.3d 884 (Tex. Crim. App. 2008).

However, as *Jackson* notes, the evidence must still be admissible under Texas Rule of Evidence 403, and the trial judge has discretion to exclude the evidence if its value is outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, or needless presentation of cumulative evidence. 160 S.W.3d at 574 (citing *Smith v. State*, 5 S.W.3d 673 (Tex. Crim. App. 1999, pet. ref'd)). Evidence may also be excluded if it does not truly negate *mens rea*. *Ruffin v. State*, 270 S.W.3d 586, 596 (Tex. Crim. App. 2008, no pet.). The trial judge also has discretion to determine if a lesser included offense instruction is appropriate. *Jackson*, 160 S.W.3d at 574. If the evidence is not admitted during the guilt stage, it may still be considered in the punishment stage to reduce the sentence. *Jackson*, 160 S.W.3d at 574.

With regard to the second question, the Supreme Court has held that counsel must "fullfil their obligation to conduct a thorough investigation of the defendant's background." *Williams*, 529 U.S. at 396. *Strickland* allows strong deference to the strategic decisions of counsel to not pursue a theory or investigate further so long as counsel has engaged in sufficient investigation such that a reasonable professional would recognize that further action is not necessary. 466 U.S. at 691-91. However, it is not the duty of the court to determine if counsel should have introduced evidence that would mitigate the culpable mental state, but rather the court must determine if the investigation performed by counsel supporting the strategic decision not to pursue such a theory is in itself reasonable. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). To determine reasonableness of an investigation, "a cursory investigation does not automatically justify a tactical decision," "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id*. at 527.

Here, under the first inquiry, Price is correct in asserting that trial counsel was able to investigate and present more evidence regarding his mental functioning on the night of the offense. Pursuant to Texas state precedent, trial counsel could have offered the evidence to show that the

-15-

neuropharmacological effects from the combination of Price's depression, ADD, drugs, and alcohol prevented Price from forming the requisite mental state to be guilty of murder under Section 19.02(b)(1-2).

However, Price has not demonstrated that trial counsel failed to perform a reasonable investigation into these factors or that trial counsel unreasonably decided not to present evidence of these factors at trial. Trial counsel's affidavit suggests that a thorough investigation was performed and that he knew of Price's mental illnesses and drug and alcohol use. CCA Record Event ID 2347219 at 36. Trial counsel also revealed in his affidavit that Price had been warned by mental health professionals not to consume alcohol and other drugs with his depression medication, yet Price continued to do so and continued to "conduct himself in a manner without regard to his danger[] to the public." *Id*. With that information, trial counsel made the determination that it was in the best interest of his client if he did not explicitly pursue a diminished capacity-like argument. *Id*. Instead, trial counsel opted for a more subtle introduction and presentation of mental deficiency without prompting the state to delve further into Price's voluntary and potentially irresponsible drug and alcohol use. A strategic decision by counsel to not present evidence that is "double-edged" is not objectively unreasonable and does not constitute deficient performance. *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) (citing *Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994)).[14]

Price also argues that there was an investigative failure on trial counsel's part because Dr. Murphey's affidavit states that she did not discuss with trial counsel the neuropharmacological and physical effects of the combination of mental illness, drugs, and alcohol present in Price's system at the time of the offense. *Id*. at 45-47. However, given trial counsel's earlier investigation, Price's history of mental illness, drug use, alcohol use, and the potential prejudicial effects the drug use could have had if presented at trial, the Court cannot find that the state habeas court unreasonably found that trial counsel's investigation was sufficient and that such questioning of Murphey would not be beneficial to the defense.

---

[14]The Fifth Circuit later reaffirmed this proposition, stating "so long as the decision not to introduce double-edged mitigating evidence was based on trial strategy rather than lack of investigation, those questions are even less susceptible to judicial second-guessing." *Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002) (citing *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999)).

In sum, Price has not shown that trial counsel's performance fell below an objectively unreasonable standard because he did not investigate and present more expert testimony regarding the mental capabilities of Price on the night of the offense. Further, Price has not shown that he was prejudiced by trial counsel's investigation and failure to present expert testimony, namely because he has not shown that the evidence was in fact admissible and because the lesser included offense of manslaughter was presented for consideration by the jury. Therefore, the Court cannot find that it was objectively unreasonable for the state court to find that Price did not satisfy the *Strickland* standard.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner's objections lack merit. Additionally, this Court's review of the non-objected-to portions of the Magistrate Judge's Report and Recommendation reveals no clear error.   Accordingly, this Court ACCEPTS the Magistrate Judge's recommendation and  DISMISSES Petitioner Price's petition for a writ of habeas corpus.

It is so ORDERED.

SIGNED this 24th day of June, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE